UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
THE 32BJ NORTH PENSION FUND and its BOARD OF
TRUSTEES,

                                        Plaintiffs,

                         -against-

AF&G REALTY ASSOCIATES, LLC; AISENBERG
FAMILY HOLDINGS LLC; BERNARD P. AISENBERG
STANDARD MARITAL TRUST; BERNARD P.
AISENBERG CREDIT SHELTER TRUST; ESTATE OF
MICHELE AISENBERG; CHESTNUT BEACON L.P.;
JONATHAN AISENBERG LIVING TRUST; NADYA L.
AISENBERG TRUST FBO MARGARET AISENBERG;
MARGARET AISENBERG; JAMES AISENBERG 2016
REVOCABLE TRUST; ROBERT AISENBERG; and
ELIZABETH CRANE

                                        Defendants.
-------------------------------------------------------------------------X

**COMPLAINT**

Case No. 22-4984

        Plaintiffs, the 32BJ North Pension Fund and its Board of Trustees (collectively, "Plaintiffs"

or the "Pension Fund"), by their attorneys, Slevin & Hart, P.C., hereby complain of Defendants

AF&G Realty Associates ("AF&G"), Aisenberg Family Holdings LLC ("AFH"), as well as the

following Defendants who are or were members of AFH's limited liability company ("LLC") and

are referred to collectively hereafter as the "AFH Members":  Bernard P. Aisenberg Standard

Marital Trust; Bernard P. Aisenberg Credit Shelter Trust; Estate of Michele Aisenberg; Chestnut

Beacon L.P.; Jonathan Aisenberg Living Trust; Nadya L. Aisenberg Trust FBO Margaret

Aisenberg; Margaret Aisenberg; James Aisenberg 2016 Revocable Trust; Robert Aisenberg; and

Elizabeth Crane.  AF&G, AFH, and the AFH Members are referred to collectively hereafter as

"Defendants."

## Jurisdiction and Venue

1.      This Court has subject matter jurisdiction under Sections 502(e), 502(f), and 4301(c) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c); and 28 U.S.C. § 1331.

2.      Jurisdiction further exists over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 in that they are so related to those claims that arise under federal law that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue lies in this Court under 28 U.S.C. § 1391, and ERISA §§ 502(e)(2) and 4301(d), 29 U.S.C. §§ 1132(e)(2) and 1451(d).

## The Parties

4.      Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

5.      The Pension Fund is a "plan," an "employee pension benefit plan," and a "multiemployer plan," within the meanings of ERISA §§ 3(2), (3), and (37), 29 U.S.C. §§ 1002(2), (3), and (37), respectively and is administered at 25 West 18th Street, New York, NY 10011.

6.      The Trustees are "fiduciaries" within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21).  The Trustees bring this action on behalf of the Pension Fund and its participants and beneficiaries pursuant to ERISA §§ 502(g)(2) and 4301(a)(1), 29 U.S.C. §§ 1132(g)(2) and 1451(a)(1).

7.      Upon information and belief, at all times relevant hereto, AF&G and AFH (collectively, the "Control Group") were "employers" within the meaning of ERISA §§ 3(5) and 4203(a), 29 U.S.C. §§ 1002(5) and 1383(a).

8.     Upon information and belief, AF&G maintains its primary offices at 21 West 38th Street, 8th Floor, New York, NY  10018.  Service of process may be effectuated upon AF&G by serving the New York Secretary of State as statutory agent pursuant to N.Y. LLC Law § 301(a), which is given effect by Fed. R. Civ. P. 4(h)(1)(B), which authorizes service upon an unincorporated association by serving any agent authorized by law to receive service of process.

9.     Upon information and belief, prior to its voluntary dissolution, AFH also maintained its primary offices at 21 West 38th Street, 8th Floor, New York, NY 10018.  According to records obtained from the New York Department of State, attached hereto as Exhibit A, AFH filed a certificate of dissolution on November 15, 2021, just 20 days after the Pension Fund notified the Control Group that it owed withdrawal liability to the Pension Fund, as set forth below.  As a result, AFH, was registered by DOS as having been voluntarily dissolved effective November 16, 2021.

10.     Upon information and belief, each of the AFH Members were members of AFH's LLC at the time of AFH's dissolution.  In this regard, attached hereto as Exhibit B is an email dated February 25, 2021, and corresponding attachment, received from Anthony T. Simari, Esq. ("Simari"), counsel to AF&G.  In the attachment, AF&G, through Simari, reported that AFH owned 99.999% of AF&G, and further identified the 10 different AFH Members, and provided their corresponding ownership percentages of AFH.  With the possible exception of Defendant Robert Aisenberg who, upon information and belief, resides at 1030 President Ave., Apt. 210, Fall River, MA  02720-5923, Plaintiffs lack information necessary to effectuate service on the AFH Members.  Accordingly, Plaintiffs will seek the information necessary to effectuate service on the AFH Members in discovery.

**The Control Group's Withdrawal from the Pension Fund and Default**

11.    Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

12.    At all times relevant to this action, AF&G was a party to one or more collective bargaining agreements obligating it to make contributions to the Pension Fund on behalf of its covered employees.

13.    Upon information and belief, AF&G was required to make such contributions to the Pension Fund for covered employees at each of three separate buildings that AF&G then owned (collectively, the "AF&G Buildings"):  (a) "Building #4245," located 1126-1130 Evergreen Ave. in the Bronx; (b) "Building #4247," located at 1491-1493 Watson Ave. in the Bronx; and (c) "Building #7075," located at 246-248 Centre Ave. in New Rochelle.

14.    The Trustees determined that AF&G completely withdrew from the Pension Fund because AF&G permanently and completely ceased to have an obligation to contribute to the Pension Fund when it sold the AF&G Buildings in early 2020.  In this regard, property records reflect that AF&G sold Building 4245 in February 2020 for $7,900,000, which exceeded the mortgage on the property of $5,601,000.  Likewise, property records reflect that AF&G sold Building 4247 in February 2020 for $7,100,000, which exceeded the mortgage on the property of $4,899,000.  Property records also reflect that AF&G sold Building 7075 in March 2020, although the sale price is not currently known.  In other words, AF&G withdrew from the Pension Fund when it sold the AF&G Buildings for more than $15 million.  Yet, despite receiving more than $15 million from the sales of the AF&G Buildings, and apparently profiting from the sales, AF&G has failed to pay the $155,173.00 in withdrawal liability owed to the Pension Fund.

15.    As a result of the sale of the AF&G Buildings, the Trustees determined that AF&G effected a complete withdrawal from the Pension Fund within the meaning of ERISA § 4203(a)(2),

29 U.S.C. § 1383(a)(2).  By letter sent to both AF&G directly and AF&G's counsel, Simari, dated October 26, 2021 (the "Assessment"), the Pension Fund notified the Control Group of that determination.  A true and correct copy of the Assessment is attached hereto as Exhibit C.

16.     The Assessment also notified the Control Group, pursuant to ERISA § 4202, 29 U.S.C. § 1382, that the Pension Fund had determined that it owed withdrawal liability to the Pension Fund pursuant to ERISA § 4219(b)(1), 29 U.S.C. § 1399(b)(1).  Specifically, pursuant to ERISA § 4211(c), 29 U.S.C. § 1391(c), the Assessment informed the Control Group that its lump sum withdrawal liability was $155,173.00, which, pursuant to ERISA § 4219(c), 29 U.S.C. § 1399(c), was payable either as a lump sum or in 80 quarterly installment payments of $2,857.75 (the "Withdrawal Liability").  (Ex. C).

17.     The Assessment further notified the Control Group that its first quarterly installment Withdrawal Liability payment was due within 60 days of receipt of the Assessment (the "Due Date").  (Ex. C).

18.     The Control Group timely received the Assessment as, by email dated November 2, 2021, Simari, on behalf of AF&G, responded to an email from the Pension Fund's counsel attaching the Assessment.  A true and correct copy of that email is attached hereto as Exhibit D.

19.     Pursuant to ERISA § 4219(b)(2), 29 U.S.C. § 1399(b)(2), if the Control Group had any dispute with the Assessment, it was required to, within 90 days after receipt thereof: (i) ask the Trustees to review any specific matter relating to the determination of their liability and the schedule of payments; (ii) identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to them; and/or (iii) furnish any additional relevant information to the Trustees (collectively, "Request Review").

20.     The Control Group did not Request Review at any time within 90 days of receipt of the Assessment.

21.     Pursuant to ERISA § 4221(a)(1), 29 U.S.C. § 1401(a)(1), an employer must Request Review prior to initiating arbitration, which is the only means by which a dispute regarding the Assessment may be resolved.  If an employer does not timely Request Review, it cannot demand arbitration; and if it does not or cannot demand arbitration on a timely basis, the Assessment becomes final and binding.

22.     Accordingly, because the Control Group did not Request Review within 90 days of the Assessment, it waived its right to Request Review and to initiate arbitration, and the Assessment became final and binding.

23.     The Control Group failed to make its first scheduled quarterly payment by the Due Date.

24.     By letter sent to both AF&G directly and AF&G's counsel, Simari, dated January 14, 2022 (the "Delinquency Letter"), the Pension Fund notified the Control Group that it was delinquent in its first installment payment and would be in default, within the meaning of ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5), if it failed to cure the delinquency within 60 days of the date of the Delinquency Letter.  The Delinquency Letter also demanded interest on the late payment at a rate of 9% per annum plus liquidated damages in the amount of $571.55 (that being 20% of the late payment).  The Delinquency Letter further informed the Control Group that, in the event of default, the Pension Fund would accelerate the Withdrawal Liability installment payments, making the full lump sum amount immediately due and owing.  The Delinquency Letter also advised that the Control Group would be liable for additional interest, attorneys' fees, costs, and liquidated

damages if the Pension Fund was required to file a lawsuit to collect any unpaid withdrawal liability.  A true and correct copy of the Delinquency Letter is attached hereto as Exhibit E.

25.     AF&G timely received the Delinquency Letter as, on the same day the Delinquency Letter was sent, January 14, 2022, Simari, on behalf of AF&G, responded to an email from the Pension Fund attaching the Delinquency Letter.  A true and correct copy of this email is contained in the email thread attached hereto as Exhibit F.

26.     The Control Group failed to cure its delinquencies within 60 days of the Delinquency Letter.  Specifically, to avoid defaulting on its Withdrawal Liability, the Control Group was required to ensure that the Pension Fund received its first installment payment by no later than March 15, 2022, that being 60 days after the Control Group received the Delinquency Letter.

27.     The Control Group failed to make its first installment payment within 60 days after receiving the Delinquency Letter and has failed to make any payments towards its Withdrawal Liability.

28.     Subsequent to the expiration of the 60 days referenced in the Delinquency Letter, the Pension Fund and its counsel sent three additional letters to the Control Group: (a) advising it that the Pension Fund had accelerated its Withdrawal Liability installment payments because of the Control Group's default; (b) making a demand for payment of the accelerated Withdrawal Liability to avoid the filing of this lawsuit; and (c) seeking proof that the AFH Members did not receive any distributions from AFH as alleged herein.  However, the Control Group has nevertheless failed to make any payments towards its Withdrawal Liability.  Moreover, the Control Group failed to provide any proof that the AFH Members did not receive distributions as alleged herein.

## AFH is a Member of the Control Group

29.     The Pension Fund incorporates the foregoing paragraphs as if fully stated herein.

30.     ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1), provides that for purposes of Title IV of ERISA, "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer," and that the definition of whether there is such common control "shall be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under section 414(c) of title 26."

31.     Accordingly, if one or more trades or businesses are under "common control," as that term is defined by regulations issued by the Department of the Treasury, they are considered a controlled group, and the entire controlled group is the "employer" for all purposes under Title IV of ERISA.

32.     Treasury Regulation 1.414(c)-2(c)(1)(b), 26 C.F.R. § 1.414(c)-2(c)(1), provides that one basis for establishing "common control" is a "parent-subsidiary" relationship between companies, which requires the parent (in this case, AFH) to hold a "controlling interest" in the subsidiary (in this case, AF&G). Because AF&G and AFH are LLCs, rather than corporations, they are treated as partnerships for controlled group purposes, and, as such, a parent-subsidiary controlled group exists between them so long as AFH owns "at least 80 percent of the profits interest or capital interest" of AF&G. Treas. Reg. 1.414(c)-2(b)(2)(i)(C), 26 CFR § 1.414(c)-2(b)(2)(i)(C).

33.     Upon information and belief, at the time of AF&G's withdrawal from the Pension Fund, AFH owned a sufficient controlling interest in AF&G as to result in AFH being a member of the Control Group. In this regard, pursuant to the ownership information that AF&G provided through Simari on February 25, 2021, AFH owned 99.999% of AF&G. (Ex. B).

8

34.      For all notices provided to AF&G – including, but not limited to the Assessment and Delinquency Letter – notice to one member of the Control Group (such as AF&G) is sufficient notice to the other members of the Control Group (such as AFH).

35.      All members of the Control Group are jointly-and-severally liable for all amounts owed as a result of AF&G's withdrawal from the Pension Fund.

**AFH's Dissolution**

36.      Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

37.      As set forth above, upon information and belief, AFH filed its Certificate of Dissolution with DOS on November 15, 2021, just 20 days after the Pension Fund sent the Assessment.

38.      Thus, AFH was aware that it owed Withdrawal Liability to the Pension Fund at the time of its dissolution.

39.      AFH failed to satisfy its debts to the Pension Fund upon its dissolution in that AFH has failed to make any payments towards the Withdrawal Liability.

**Distributions to the AFH Members**

40.      Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

41.      AF&G sold the AF&G Buildings in early 2020 for more than $15 million.

42.      Upon information and belief, and because Defendants have not provided information to the contrary, the proceeds of the sale of the AF&G Buildings were distributed to AFH's members, whether as a result of:  (a) the proceeds being distributed by AF&G to AFH, which in turn then distributed the proceeds to AFH's members; (b) the proceeds being distributed directly by AF&G to AFH's members; and/or (c) in some other manner.

.

43.     Upon information and belief, AFH also distributed all of its other assets to the AFH Members in connection with AFH's dissolution.

**Count I**
**Delinquent Withdrawal Liability**
**ERISA §§ 502(g)(2), 4301(b); 29 U.S.C. §§ 1132(g)(2), 1451(b)**
**(Against the Control Group)**

44.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

45.     ERISA § 4219(c)(5)(A), 29 U.S.C. § 1399(c)(5)(A), defines a "default" as "the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure."

46.     Pursuant to ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5), "[i]n the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made."

47.     In the Delinquency Letter, the Control Group received the requisite notice from the Pension Fund that its first installment payment was past due.

48.     Accordingly, the Control Group's time to cure its failure to timely make its first payment expired 60 days after the Delinquency Letter

49.     The Control Group failed to cure this failure within those 60 days.  As a result, the Control Group has defaulted on its Withdrawal Liability payments and the Pension Fund is entitled to accelerate the full amount of the Withdrawal Liability, which is $155,173.00.

50.     Pursuant to ERISA § 4301(b), 29 U.S.C. § 4301(b), a failure by an employer to pay withdrawal liability when due shall be treated in the same manner as delinquent contributions.

51.    Pursuant to ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), and the Pension Fund's Withdrawal Liability Rules, in pursuing an action to recover delinquent contributions or withdrawal liability, in addition to the unpaid amounts, Plaintiffs are entitled to recover: (a) interest at a rate set by the Pension Fund; (b) the greater of a second assessment of interest at a rate set by the Pension Fund, or liquidated damages up to a maximum of 20%; and (c) their reasonable attorneys' fees and costs incurred.

52.    Plaintiffs seek relief as specified in the Prayer for Relief.

**Count II**
**Transactions to Evade or Avoid Withdrawal Liability**
**ERISA § 4212(c), 29 U.S.C. § 1392(c)**
**(Against All Defendants)**

53.    Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

54.    Pursuant to ERISA § 4212(c), 29 U.S.C. § 1392(c), if a principal purpose of any transaction is to evade or avoid liability, withdrawal liability shall be determined and collected without regard to such transaction.

55.    To the extent that AF&G's distributions to either AFH and/or the AFH Members have left AF&G unable to satisfy the Withdrawal Liability owed to the Pension Fund, but for those distributions, AF&G would have been able to satisfy its debts, as evidenced by the fact that AF&G sold the AF&G Buildings the year prior for more than $15 million and the amount of Withdrawal Liability was just $155,173.00.  Upon information and belief, a principal purpose of any such distributions was to avoid paying the Withdrawal Liability owed to the Pension Fund.  In this regard, AF&G was aware that, as an employer participating in an ERISA-governed defined benefit pension plan, it could owe Withdrawal Liability to the Pension Fund as a result of its permanent

cessation of its obligation to contribute to the Pension Fund resulting from its sale of the AF&G Buildings.

56.     To the extent that AFH's dissolution and distributions to the AFH Members have left AFH unable to satisfy the Withdrawal Liability owed to the Pension Fund, but for those transactions, AFH would have been able to satisfy its debts to the Pension Fund, as evidenced by the fact that AF&G, a company that was 99.999% owned by AFH, sold the AF&G Buildings the year prior for more than $15 million and the amount of Withdrawal Liability was just $155,173.00. Upon information and belief, a principal purpose of the dissolution of AFH and distributions to the AFH Members was to avoid paying the Withdrawal Liability owed to the Pension Fund.  In this regard, at the time AFH was dissolved, AFH and the AFH Members knew that AFH owed Withdrawal Liability to the Pension Fund.

57.     Because, upon information and belief, a principal purpose of these transactions was to avoid paying the Withdrawal Liability owed to the Pension Fund, the Pension Fund is entitled to collect the Withdrawal Liability without regard to such transactions.

58.     Plaintiffs seek relief as specified in the Prayer for Relief.

**Count III**
**Transfer Voidable as to Present or Future Creditor**
**N.Y. Debtor and Creditor Law § 273(a)**
**(Against All Defendants)**

59.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

60.     N.Y. Debtor and Creditor Law § 273(a) provides that:

A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1)     with actual intent to hinder, delay or defraud any creditor of the debtor; or

(2)     without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i)     was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii)    intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

61.     Upon information and belief, any distributions made by AF&G and/or AFH to the AFH Members were made "with actual intent to hinder, delay or defraud" the Pension Fund from collecting the Withdrawal Liability owed by AF&G and AFH.

62.     In the alternative, upon information and belief, any distributions made by AF&G and/or AFH to the AFH Members were made "without receiving a reasonably equivalent value in exchange for the transfer," in that, upon information and belief, no value was provided by the AFH Members, and AF&G, AFH, and the AFH Members knew or reasonably should have known that, as a result of such distributions, AF&G and AFH would be unable to pay their debts to the Pension Fund.

63.     Plaintiffs seek relief as specified in the Prayer for Relief.

**Count IV**
**Transfer Voidable as to Present Creditor**
**N.Y. Debtor and Creditor Law § 274(a)**
**(Against All Defendants)**

64.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

65.     N.Y. Debtor and Creditor Law § 274(a) provides that

A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably

equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

66.     Upon information and belief, any distributions made by AF&G to AFH and/or the AFH Members were made without receiving a reasonably equivalent value in that, upon information and belief, no value was provided, and such distributions rendered AF&G insolvent to the extent that AF&G is unable to satisfy its obligations to the Pension Fund.

67.     Upon information and belief, any distributions made by AFH to the AFH Members were made without receiving a reasonably equivalent value in that, upon information and belief, no value was provided, and such distributions rendered AFH insolvent to the extent that AFH is unable to satisfy its obligations to the Pension Fund.

68.     Plaintiffs seek relief as specified in the Prayer for Relief.

**Count V**
**Violation of New York LLC Law**
**N.Y. LLC Law § 704(a)**
**(Against AFH and the AFH Members)**

69.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

70.     N.Y. LLC Law § 704 provides that:

Upon the winding up of a limited liability company, the assets shall be distributed as follows:

(a)     to creditors, including members who are creditors, to the extent permitted by law, in satisfaction of liabilities of the limited liability company, whether by payment or by establishment of adequate reserves, other than liabilities for distributions to members and former members under section five hundred seven or section five hundred nine of this chapter;

(b)     except as provided in the operating agreement, to members and former members in satisfaction of liabilities for distributions under section five hundred seven or section five hundred nine of this chapter;  and

14

(c)     except as provided in the operating agreement, to members first for the return of their contributions, to the extent not previously returned, and second respecting their membership interests, in the proportions in which the members share in distributions in accordance with section five hundred four of this chapter.

71.     Thus, upon dissolving AFH, AFH and the AFH Members were obligated to distribute AFH's assets to AFH's creditors, including the Pension Fund, before making any distributions to the AFH Members.

72.     Upon information and belief, AFH and the AFH Members breached this obligation as they authorized and accepted distributions to the AFH Members, including the proceeds of the sales of the AF&G Buildings, despite having failed to pay the Withdrawal Liability owed to the Pension Fund and despite being aware of the Withdrawal Liability owed by AFH.

73.     Plaintiffs seek relief as specified in the Prayer for Relief.

### Prayer for Relief

**WHEREFORE,** Plaintiffs pray that the Court grants relief as follows:

1.     Entering judgment against Defendants, jointly-and-severally, and awarding to the Pension Fund all amounts owed to the Pension Fund due to AF&G's withdrawal, including:

   a.     The unpaid Withdrawal Liability of $155,173.00; and

   b.     All interest that accrued on any late installment payments from the date that such payments were due until the date that the Pension Fund accelerated the Withdrawal Liability, in an amount to be proved; and

   c.     All interest due and owing on the accelerated Withdrawal Liability as of the later of the date of judgment or the date paid, in an amount to be proved; and

15

       d.      Liquidated damages in an amount equal to the greater of:  (a) a second assessment of interest; or (b)  20% of the unpaid withdrawal liability, in an amount to be proved; and

       e.      Plaintiffs' reasonable attorney's fees and the costs of this action, including fees and costs incurred in the execution of any judgment awarded; and

2.      Granting Plaintiffs such further and other relief as the Court may deem just and proper.

Dated: June 14, 2022                 Respectfully submitted,

                                      */s/ Meredith B. Golfo*
                                      Meredith B. Golfo
                                      Richard S. Siegel (*pro hac vice* to be filed)
                                      SLEVIN & HART, P.C.
                                      Attorneys for Plaintiffs
                                      1625 Massachusetts Avenue N.W., Ste. 450
                                      Washington D.C. 20036
                                      (202) 797-8700
                                      (202) 234-8231 (fax)
                                      mgolfo@slevinhart.com
                                      rsiegel@slevinhart.com

A copy of this Complaint will be served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, as required by ERISA § 502(h), 29 U.S.C. § 1132(h).

21099454v9